UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| JOSEPH GRASSO, | : | |
| DEBTOR. | : | BANKRUPTCY NO. 12-11063-MDC |
| | | |
| THE SHERWIN WILLIAMS COMPANY, | : | |
| PLAINTIFF, | : | |
| v. | : | ADVERSARY NO. 12-00394-MDC |
| JOSEPH GRASSO, | : | |
| DEFENDANT. | : | |

**<u>MEMORANDUM DENYING MOTION FOR SUMMARY JUDGMENT AND DETERMING
CERTAIN FACTS AS ESTABLISHED PURSUANT TO FED. R. CIV. P. 56(g)</u>**

Before this Court is an adversary proceeding wherein the Sherwin Williams Company (the "Movant") seeks to have its claim against Joseph Grasso (the "Debtor") declared nondischargeable pursuant to §§523(a)(2)(A), 523(a)(4)[1] or 523(a)(6). The Movant alleges that its claim consists of potential damages in an amount that may exceed $3.6 million that arise from its investment in a restaurant development project known as the Union Trust Steakhouse that was most recently operated by Union Trust Philadelphia, LLC ("Union Trust").[2] The Movant alleges two sources of potential damages. First, the Movant claims that the Debtor is liable as a guarantor of WSC 717 Tenant, L.P. ("WSC LP") for three capital contributions made by the Movant to WSC LP: (1) a contribution of $1,446,043.00 made on December 22, 2008; (2) a contribution of $503,537.62 made on January 28, 2009; and (3) a contribution of $511,268.00 made on December 7, 2009 (collectively, the "Capital Contributions"). Second, the Movant claims that the Debtor is liable as a guarantor of WSC LP for the potential loss of certain tax

---

[1] The Movant and Debtor agreed by Stipulation and Order dated June 26, 2013, that, among other things, Movant's §523(a)(4) claim is dismissed with prejudice. This Memorandum will address the Movant's request for summary judgment on its remaining two claims only.

[2] Union Trust is subject to a separate bankruptcy proceeding before this Court, Bky. No. 11-12565.

credits that accrued to the Movant as a result of its financing of the rehabilitation of real property located at 717 Chestnut Street, Philadelphia, Pennsylvania (the "Property").

On March 11, 2013, the Movant filed a Motion for Default Judgment or, in the alternative, for Partial Summary Judgment [Docket No. 40] (the "Motion"). On April 18, 2013, the Debtor responded to the Motion by filing his Answer in Opposition [Docket No. 63] (the "Response"). On May 8, 2013, this Court held a hearing to address the Motion (the "Hearing"). After considering the arguments of both parties, this Court took the matter under advisement. Having fully considered the parties' pleadings and various arguments made before this Court at the Hearing, this Court is now prepared to issue its decision. For the reasons stated herein, this Court finds that the Movant failed to meet its initial burden and will deny the Motion with regard to each of its remaining two claims for relief. Because the parties did not dispute many of the facts underlying this proceeding, this Memorandum shall identify, as permitted by Fed. R. Civ. P. 56(g), all material facts that are not genuinely in dispute and shall treat such facts as established in the case for purposes of the trial presently scheduled to be held before this Court on July 8, 2013.[3]

## I.  PROCEDURAL BACKGROUND

On May 11, 2012, the Movant initiated this Adversary Proceeding by filing a Complaint [Docket No. 1] (the "Complaint"). In the Complaint, the Movant asserted one claim of relief which alleged that any debts owed by the Debtor are nondischargeable pursuant to §523(a)(4) as a result of fraud or defalcation while acting in a fiduciary capacity. The Complaint asserted no other claims for relief. On June 13, 2012, the Debtor filed an Answer to the Complaint. This proceeding thereafter proceeded along a normal course and largely outside the supervision of this Court.

On January 29, 2013, the Movant filed its Amended Complaint [Docket No. 32] (the "Amended Complaint"). In the Movant's Amended Complaint, the Movant supplemented its original Complaint by asserting two additional claims for relief. First, the Movant alleges that its claim against the Debtor is

---

[3] The trial in the underlying adversary was scheduled for June 28, 2013, and continued to July 8, 2013, to provide the parties with an opportunity to address the impact, if any, of the conversion of the Debtor's case from Chapter 11 to Chapter 7.

2

nondischargeable pursuant to §523(a)(2) as the result of the Debtor false representations. Second, the Movant reasserts its original allegation that its claim is nondischargeable pursuant to §523(a)(4) as the result of the Debtor's fraud or defalcation while acting in a fiduciary capacity. Finally, in the third claim of relief, the Movant alleges that its claim is the result of the Debtor's willful and malicious intent to injure the Movant and therefore exempt from discharge pursuant to §523(a)(6). Significantly, the Amended Complaint makes no allegation that WSC's claim resulted from embezzlement or larceny.

After the Debtor failed to file a timely response to the Amended Complaint, the Movant filed the instant Motion in which it sought a default judgment against the Debtor. The Debtor then filed its Answer dated March 14, 2013 [Docket No. 42] (the "Answer"). As a result, the Movant abandoned its request for default judgment and subsequently filed on April 26, 2013, a revised motion wherein the Movant renewed its request for summary judgment on substantially identical grounds.

In the Motion, the Movant argues that it is entitled to summary judgment on each of the three claims of relief asserted by the Amended Complaint. With regard to its first claim of relief, the Movant argues that it is entitled to summary judgment on its §523(a)(2)(A) claim because uncontested facts establish that certain false representations alleged to have been made by the Debtor induced the Movant to make the Capital Contributions and that prevented the Movant from taking action to prevent the recapture of certain tax credits that accrued to the Movant as result its financing of the renovation of the Property. With regard to its second claim of relief, the Movant argues that it is entitled to summary judgment on its §523(a)(4) claim because uncontested facts establish that the Debtor caused the embezzlement of a certain leasehold interest from Chestnut Restaurant Ventures, LLC ("CRV") to Union Trust. In the Amended Complaint, the Movant premised its second claim of relief on a theory of fraud or defalcation in the performance of the Debtor's alleged fiduciary duties. Finally, with regard to its third claim of relief, the Movant argues that it is entitled to summary judgment on its §523(a)(6) claim because certain uncontested facts establish that the Debtor maliciously intended to injure the Movant by (1) allowing the Property to be foreclosed upon by TD Bank and, in the alternative, (2) making certain false representations that induced the Movant to make the Capital Contributions.

3

In his Response, the Debtor does little more than regurgitate the standard boilerplate setting forth the various inferences and burdens associated with a court's consideration of a motion for summary judgment and the elements of each of the causes of action upon which the Movant seeks to have its claim determined to be exempt from discharge. Significantly, the Debtor does not challenge the accuracy of the Movant's various factual allegations including whether the statements identified by the Movant were false when made. Rather, the Debtor in his Response and at the Hearing made three arguments for denial of the Motion as a matter of law. First, the Debtor argued that the Movant does not possess a claim against the Debtor and therefore lacks standing to bring a dischargeability action. Second, the Debtor argued with regard to the Movant's §523(a)(2)(A) claim for relief that the representations were not made by the Debtor and therefore cannot be attributed to him. Third and also specific to the whether the Movant met its §523(a)(2)(A) burden, the Debtor argued that the Movant did not establish that the Debtor gained a direct benefit as a result of the alleged conduct.[4] From this Court's review of the record, this Court cannot identify any arguments made by the Debtor that are specific to the Movant's §§523(a)(4) and 523(a)(6) causes of action.

## II. **UNDISPUTED FACTS**

This Court identifies the following material facts as not genuinely in dispute and shall, pursuant to Fed. R. Civ. P. 56(g), as incorporated by Fed. R. Bankr. P. 7056, treat such facts as established for purposed of the trial presently scheduled to be held before this Court on Monday, July 8, 2013.

    A.    The Movant's claim against the Debtor arises from potential losses the Movant may incur as a result of the potential loss of certain tax credits that accrued to the Movant in its capacity as the limited partner of WSC LP.

---

[4] This Court notes that the Debtor is challenging the legal sufficiency of the Amended Complaint for reasons unrelated to the Movant's arguments presented in the Motion. The Debtor is not challenging the Movant's factual assertions. These arguments should have been made pursuant to a cross motion for summary judgment. Having found these arguments to be unpersuasive without reference to any argument that the Movant may have mustered in response, this Court finds that the Movant was not prejudiced by the Debtor's failure to present its arguments pursuant to a procedurally appropriate vehicle. *See, e.g.,* E.D. Pa. L.B.R. 9014-3; *Merritt v. Medical Disability Ins. Plan*, Civ. No. 96-4495, 1998 WL 1110694. *1 (D.N.J. Aug. 28, 1998) (noting that by failing to characterize its response as a cross-motion for summary judgment, party did not comply with local notice rules).

B. The Debtor has no direct interest in WSC LP. Rather, the Debtor served as the managing member of WSC 717 Tenants GP, LLC ("WSC GP"), and the general partner of WSC LP. WSC LP has no partners other than the Movant and WSC GP.

C. Other than serving as managing member of WSC GP, the Debtor does not hold a direct interest in WSC LP or WSC GP. He is an owner of Walnut Street Capital, LLC which in turn is the owner and sole member of WSC GP.

D. WSC LP was created pursuant to an Amended and Restated Limited Partnership Agreement dated December 10, 2008 (the "Partnership Agreement"), entered into by the Movant by and between WSC GP, the Debtor and Garrett Miller.

E. The Debtor executed the Partnership Agreement on behalf of WSC GP as its managing member as well as in his individual capacity as a guarantor.

F. The purpose of WSC LP was to serve as the subtenant of WSC 717 Associates, L.P. ("Associates") pursuant to a lease agreement dated November 2008.

G. As a subtenant at the Property, WSC LP was to effectuate the renovation and rehabilitation of the Property into a commercial building that would qualify for Historic Rehabilitation Tax Credits under Section 47 of the Internal Revenue Code.

H. The Movant claimed Historic Rehabilitation Tax Credits relating to the Property for the tax years 2008 through 2012.

I. The availability of the Historic Rehabilitation Tax Credits was contingent upon WSC LP retaining a possessory interest in the Property for a period of at least five years.

J. As of November 2012, the restaurant that occupied the Property ceased operation.

K. Pursuant to the Partnership Agreement, WSC GP is obligated to contribute to the WSC LP partnership an amount equal to 89% of the value of any tax credits that become subject to recapture.

L. Pursuant to ¶2.6(d)(2) of the Partnership Agreement, WSC LP is obligated to distribute to the Movant "an amount equal to the recapture and interest thereon…"

M. Pursuant to ¶9.14 of the Partnership Agreement, the Debtor guaranteed the payment and

5

performance of obligations of WSC LP and WSC GP under the Partnership Agreement.

N. By operation of the Debtor's guarantee of WSC LP's obligations contained in the Partnership Agreement, the Movant possesses a contingent claim against the Debtor for any damages the Movant may incur resulting from the recapture of the Historic Rehabilitation Tax Credits.

O. In §4.4(c)(4) of the Partnership Agreement, WSC GP warranted that a loan from the Philadelphia Industrial Development Corporation to CRV in the amount of $5,500,000.00 with an annual interest of 2.75% (the "PIDC Loan") was closing "contemporaneously" with the Movant's initial capital contribution. This representation was false when made.

P. In §4.11 of the Partnership Agreement, WSC GP warranted that the Property was owned free and clear of any liens other than those identified in a title report dated May 29, 2007, prepared by Fidelity National Title Insurance Company (the "Title Report"). This representation was false when made.

Q. Pursuant to a loan advanced to Associates on or about August 2008, TD Bank advanced to Associates an undisclosed amount that was to be repaid on January 31, 2009 (the "TD Bank Loan").

R. The Debtor personally guaranteed Associates obligation to repay the TD Bank Loan that would become payable as of January 31, 2009.

S. To secure its obligations under the TD Bank Loan, Associates granted to TD Bank in August 2008 a mortgage on the Property (the "TD Bank Mortgage") and an assignment of rents arising from a lease dated January 1, 2008, of the Property between Associates and CRV.

T. As of the date of execution of the Partnership Agreement, the Property was subject to the TD Bank Mortgage.

U. The TD Bank Mortgage was not disclosed by the Title Report.

V. The Debtor had knowledge of the TD Bank Loan and the TD Bank Mortgage at the time he executed the Partnership Agreement.

W. On June 22, 2010, TD Bank obtained a judgment by confession against the Associates, CRV, and the Debtor, among others, in Case No. 002276, Philadelphia Common Pleas Court, in the

amount of $4,556,968.47 plus interest at the rate of $772.48 per diem plus costs and fees.

  X. In April 2012, this Court granted TD Bank relief to foreclose on the TD Bank Mortgage.

  Y. On December 22, 2008, the Movant made its first capital contribution to WSC LP in the amount of $1,446,043.00.

  Z. As of December 22, 2008, the representations contained in §§4.4(c)(4) and 4.11 of the Partnership Agreement remained false.

  AA. On January 21, 2009, WSC LP issued its Second Contribution Notice to the Movant (the "Second Contribution Notice"). The Debtor executed the Second Contribution Notice in his capacity as the managing member of WSC LP.

  BB. In the Second Contribution Notice, WSC LP warranted that it was not in breach of any provision of the Partnership Agreement. This representation was false when made.

  CC. On January 28, 2009, the Movant made its second capital contribution to WSC LP in the amount of $503,537.62.

  DD. On November 11, 2009, WSC LP issued its Third Contribution Notice to the Movant (the "Third Contribution Notice," collectively with the Second Contribution Notice, the "Contribution Notices"). The Debtor executed the Second Contribution Notice in his capacity as the managing member of WSC LP.

  EE. In the Third Contribution Notice, WSC LP warranted that it was not in breach of any provision of the Partnership Agreement. This representation was false when made.

  FF. On December 7, 2009, the Movant made its third capital contribution to WSC LP in the amount of $511,268.00.

## III.   DISCUSSION

Summary judgment is appropriate when "there is no genuine issue [of] material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Movant will have met its burden if it has demonstrated from the record that each element of its claims are not subject to a genuine issue of material fact. For an issue to be genuine, reasonable minds must be able to disagree on

7

the result. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). For an issue to be material, it must have the ability to affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Each issue of fact must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587-88 (1986). If this Court determines that Movant has failed to meet its initial burden, this Court must dismiss the Motion without reference to any defenses raised by the Debtor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970). If the Movant has not met its burden, the Debtor is not obligated to set forth any evidence. If the Movant has met its burden, the Debtor may not rest on unsupported allegations to show the existence of a genuine issue of material fact. *Sellers v. GMAC Mortg. Group, Inc.*, 298 Fed.Appx. 924 (11th Cir. 2008) (addressing a plaintiff's summary judgment burden with regard to a RESPA violation); *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985) ("a genuine issue means that the evidence must create a fair doubt, and wholly speculative assertions will not suffice"); *McLean v. GMAC Mortg. Corp.*, 595 F.Supp.2d 1360 (S.D. Fla. 2009) (same). Here, the parties concede that there is no dispute regarding the facts set forth by the Movant. Rather, the only issues for this Court to determine whether the Movant has satisfied its initial burden under each of the exemptions from discharge plead by its Amended Complaint.

**Whether the Movant Possesses a Claim, §101(5)**

The Debtor argues that the Movant lacks standing to bring a nondischargeability action because the Movant does not possess "an existing actual claim." The Debtor argues he is not personally liable to the Movant and that to the extent the Movant has a claim, that claim is against WSC LP or WSC GP and that claim exists only if the IRS decides, in its discretion, to recapture the tax credits. At the Hearing, the Debtor supplemented this argument by stating that the Movant may not maintain a dischargeability proceeding until it has first established through the claim process that it has an allowable claim against the Debtor. Not surprisingly, the Debtor cites no case law to guide this Court's comprehension of this argument. Ultimately, the Debtor's argument is without legal or factual basis. As admitted by counsel for the Debtor at the Hearing, WSC is the holder of a contingent claim against the Debtor. Audio

8

recording of Hearing 5/8/2013 @ 12:12 pm (4:31:27-4:31:31) Adv. No. 08-02029MDC. The fact that the Movant's claim against the Debtor may be remote and dependent upon the occurrence of certain events does not affect the Movant's status as a holder of a claim against the Debtor. 11 U.S.C. §101(5)(A) (defining "claim" to include rights to payment that are "contingent," "unmatured," and "unliquidated"); *In re Rodriguez*, 629 F.3d 136, 142 (3d Cir. 2010); *In re W.R. Grace & Co.*, 475 B.R. 34, 113-14 (Bankr. D. Del. 2012).

The Movant is not asking this Court to liquidate the Movant's claim against the Debtor. Rather, the Movant is only requesting this Court determine that to the extent it has a claim against the Debtor, now or in the future, that claim be exempted from discharge. In other words, the Movant is asking this Court declare its allegedly contingent claim as exempt from discharge.

To prevent the parties from relitigating this issue, this Court confirms that the Movant is the holder of a contingent claim against the Debtor. As provided by ¶9.14 of the Partnership Agreement and not contested by the Debtor, the Debtor guaranteed not only WSC GP's obligations under the Partnership Agreement but also WSC LP's obligations under the Partnership Agreement. If the tax credits are recaptured, the Movant is entitled to be reimbursed by WSC LP for its loss. As provided by the Partnership Agreement, WSC GP is liable to WSC LP for 89% of the value of any tax credits. In turn, WSC LP is obligated to distribute to the Movant "an amount equal to the recapture and interest thereon…" Partnership Agreement, ¶2.6(d)(2). Pursuant to the Debtor's guarantee of WSC LP's obligations, the Movant would have right to payment from the Debtor if and when WSC LP fails to make this distribution. Therefore, it is undisputed that, according to the express terms of the Partnership Agreement, the Movant is the holder of a contingent unsecured claim against the Debtor. *In re BH & P, Inc.*, 949 F.2d 1300, 1323 n.7 (3d Cir. 1991) (stating that creditor possessed a contingent claim against debtors by virtue of the debtors' personal guarantee of creditor's direct obligor); *In re F.B.F. Indus., Inc.*, 165 B.R. 544, 548-49 (Bankr. E.D. Pa. 1994) (explaining that creditor of primary obligor holds a contingent claim against guarantor of primary obligor until default of primary obligor).

9

**Nondischargeability Resulting From False Representations, §523(a)(2)(A)**

To establish that the Claim is nondischargeable pursuant to §523(a)(2)(A), the Movant must establish the following elements: (1) the Debtor made representations knowing they were false; (2) the Debtor made the representations with the intent and purpose of deceiving the Movant; (3) the Movant justifiably relied on the Debtor's false representations; and (4) the Movant suffered a loss or damage as a proximate consequence of the representation having been made. *Field v. Mans*, 516 U.S. 59, 61 (1995) (stating elements of a §523(a)(2)(A) claim). From this Court's review of the record, this Court finds that the Movant has established each element other than the reliance prong. In its Motion and at the Hearing, the Movant provided no evidence from which this Court may infer that its reliance on the misrepresentations contained in the Partnership Agreement and the subsequent Contribution Notices was justified.

    **A.**    **Statements Attributable to a Debtor**

In response to the Motion, the Debtor did not challenge the Movant's assertion that the statements made by WSC GP in the Partnership Agreement and the subsequent Contribution Notices were false when made. Rather, the Debtor argued that these misrepresentations were made by WSC GP and may not be attributed to the Debtor for purposes of evaluating whether the Movant's claim against the Debtor was incurred as a result of a false representation. Even if this Court were to consider the Debtor's unsupported allegations regarding the authenticity of his signature, the Debtor's argument is without merit. Statements made by an "insider" of the Debtor may be attributed to him. *See, e.g., In re Quibell*, Bky. No. 10-05863, 2011 WL 3813163 (Bankr. M.D. Pa. Aug. 29, 2011). Although the definition of "insider" provided by §101(31) does not identify limited partnerships for which a debtor is an officer, it does appear that such a relationship is sufficiently similar to other relationships identified by §101(31) from which this Court may infer that WSC LG is an insider of the Debtor.

Under §101(31), if the debtor is an individual, "insider" includes a "relative of the debtor or of a general partner of the debtor;" a "partnership in which the debtor is a general partner;" a "general partner of the debtor;" or a "corporation of which the debtor is a director, officer, or person in control."

10

11 U.S.C. §101(31). The Debtor does not dispute that he is the managing member of WSC GP or that he executed the Partnership Agreement on behalf of WSC GP. His position with WSC GP is analogous to that of a director, officer, or person in control of a corporation. Because the Bankruptcy Code instructs Courts to interpret the use of "includes" to be not limiting, 11 U.S.C. §102(3) ("'includes' and 'including' are not limiting"), this Court finds sufficient similarity between the Debtor's relationship to WSC GP to an officer's relationship to a corporation to include the former within the scope of relationships that establish insider status. *See, e.g., In re Pearson*, Bky. No. 10-00946, 2010 WL 3956762, *3 (Bankr. M.D. Pa. Oct. 7, 2010) (holding that LLC was an insider of the debtor because the debtor was a member of the LLC). Having found that WSC GP is an insider of the Debtor, this Court is satisfied that the Debtor's status as its managing member is sufficient to attribute any statements made by WSC GP in the Partnership Agreement and the Contribution Notices to the Debtor for purposes of this Court's §523(a)(2)(A) analysis.

### B.  Receipt of a Benefit by the Debtor

Next, the Debtor argued that the Movant's claim is not within the §523(a)(2)(A) exception because the Debtor did not receive any benefit. This argument is also without merit. The fact that a third party received the proceeds of a loan does not preclude a creditor's nondischargeability claim against a guarantor of the credit facility. *In re Arm*, 175 B.R. 349, 353 (9th Cir. BAP 1994) (guarantor, as president of borrower, received an "indirect benefit" sufficient to exempt his personal liability from discharge); *In re Auricchio*, 196 B.R. 279, 286 (Bankr. D.N.J. 1996) (finding that debtor received a benefit from loan extended to entity he owned was sufficient to render claim within the scope of §523(a)(2)). Here, the Debtor was both a managing member of WSC LP and held an ownership interest in the entity that owns WSC GP. His relationship to WSC LP is sufficient to establish that benefits accrued to him as a result of the Movant's investment in WSC LP.

### C.  Justifiable Reliance

While §523(a)(2)(A) only requires a creditor to prove the intermediate standard of justifiable reliance, a creditor must provide some evidence that its reliance was in fact justifiable. *In re Feld*, 203

11

B.R. 360 (Bankr. E.D. Pa. 1996) (denying §523(a)(2)(A) claim based on creditor's failure to present any evidence showing that it relied on the debtor's representation). As a part of its initial burden, the Movant was required to advance some facts from which this Court was justified. Even under the intermediate standard of justifiable reliance, a creditor may not proceed blindly and expect any resulting damages to be exempted from discharge. *Field v. Mans*, 516 U.S. 59, 71 (1995) ("Justifiability is not without some limits").

The parties did little to address this element of the Movant's burden. In its Motion, the Movant asserts without foundation that it "had no way to learn of [WSC GP]'s fraud" and that it relied on the Debtor's "long operating history in the Philadelphia area" without elaborating on what that history entailed. The Movant baldly concludes that it had "no basis to doubt the numerous representations provided by [WSC GP]." Yet, a cursory review of the record undermines the Movant's allegations.

Fundamentally, the alleged misrepresentation relates to the Debtor's failure to disclose to the Movant the existence of the TD Bank Loan and the TD Bank Mortgage. The Movant alleges that it relied on the absence of the TD Bank Mortgage in reaching its decision to execute the Partnership Agreement and make the subsequent Capital Contributions. However, the Movant alleges no facts from which this Court may determine whether this reliance was justified. At the time TD Bank made the first of the three Capital Contributions, the Title Report was nearly 19 months old. The Movant does not allege that the TD Bank Mortgage was a secret lien or was otherwise unrecorded at the time of any of the Capital Contributions. Had the Movant required a contemporaneous title report, the Movant would have discovered the existence of the TD Bank Mortgage which in turn would have certainly alerted the Movant that it was being deceived.

Assuming all facts in favor of the Debtor, this Court cannot conclude that the age of the Title Report should not have alerted the Movant to the Debtor's dishonesty. The Movant provided no evidence whether its reliance upon the Title Report, despite its age, was justified. The Movant is not required to prove that its reliance was objectively reasonable and therefore would not be required to present evidence as to industry practice. *In re Cohn*, 54 F.3d 1108, 1117 (3d Cir. 1995) (discussing three types of evidence

12

a creditor may provide to prove the reasonableness of its reliance). However, the Movant should have presented to this Court whether its reliance was at least subjectively reasonable. *Field v. Mans*, 516 U.S. 59, 71 (1995) (stating that justifiable reliance standard requires reference to a creditor's knowledge and intelligence to determine whether it should have been apparent to the creditor that it was being deceived). Such evidence may have included what are the Movant's standard practices for evaluating credit-worthiness and what it has done with regard to similar transactions with the Debtor and other parties. Without presenting any evidence addressing whether its reliance was justified, the Movant has not met its initial burden of establishing that its reliance was justified. Assuming all facts in favor of the Debtor, this Court cannot conclude that the Movant should not have been warned of the Debtor's deception by the use of the 19-month-old Title Report. *See, e.g., First Midwest Bank-Deerfield Branches v. Beeler*, Adv. No. 08-4006, 2009 WL 363907, *9 (Bankr. D.S.D. Feb. 10, 2009) (holding that eight and ten months old financial statements created a genuine issue of material fact with regard to creditor's reliance); *First Am. Bank v. Schraw (In re Schraw)*, 136 B.R. 301, 305 (Bankr. S.D. Fla. 1992) (holding that creditor's reliance on 8-month old financial statement was not reasonable). From the facts in the record, this Court finds that a rational trier of fact could infer from the use of potentially outdated report was not justifiable. For this reason, this Court will deny the Motion with regard to the Movant's §523(a)(2)(A) claim.

**Nondischargeability Resulting from Willful or Malicious Injury, §523(a)(6)**

The Movant bears the burden of proof of developing a record that supports the existence of each element of its §523(a)(6) claim. *In re Coley*, 433 B.R. 476, 502 (Bankr. E.D. Pa. 2010) (denying plaintiff's motion for summary judgment on §523(a)(6) claim where plaintiff failed "to develop the summary judgment record to support the asserted 'malicious' nature of the Debtor's conduct"). In determining whether a creditor has met its burden under §523(a)(6), courts recognize that the terms "willful" and "malicious" are separate elements that must each be proven. *In re DiGiovanni*, 446 B.R. 709, 716 (Bankr. E.D. Pa. 2011); *In re Jacobs*, 381 B.R. 128, 138 (Bankr. E.D. Pa. 2008) ("The two concepts are said to be distinct requirements."). With regard to willfulness, the Movant must identify facts that demonstrate that the Debtor acted deliberately. *The Cadle Company, II, Inc. v. Hartman (In re*

13

*Hartman)*, 254 B.R. 669, 675 (Bankr. E.D. Pa. 2000). With regard to malice, the Movant's burden is two-fold. The Movant must identify facts that demonstrate that the Debtor knew with substantial certainty that its conduct would produce injury and was done without just cause or excuse. *Conte v. Gautum (In re Conte)*, 33 F.3d 303 (3d Cir. 1994) (recognizing that "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury"); *LL Lifestyle, Inc. v. Vidal (In re Vidal)*, Adv. No. 10-335, 2012 WL 3907847, *28 (Bankr. E.D. Pa. Sep. 6, 2012) ("the act resulting in the injury must be wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will") (quotations omitted); *In re Crawford*, 476 B.R. 890, 898 (Bankr. W.D. Pa. 2012) ("The action of a debtor can rise to the level of malicious if the injury was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will.") (quotations omitted); *In re Coley*, 433 B.R. 476, 498 (Bankr. E.D. Pa. 2010) (the Plaintiff must demonstrate that conduct was "wrongful and without just cause or excuse, *even in the absence of personal hatred, spite or ill-will*.") [emphasis in original]. Problematically, the Movant has omitted reference to whether the Debtor acted without just cause or excuse. Rather, the Movant has limited its argument to whether, by failing to abide by the terms of the Partnership Agreement, the Debtor knew with substantial certainty his conduct would injure the Movant.

Generally speaking, a creditor's demonstration that a debtor breached a contract is not sufficient to render nondischargeable the creditor's claim arising from that breach. *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998); *In re Jacobs*, 381 B.R. 128, 138 (Bankr. E.D. Pa. 2008) ("[Section] 523(a)(6) is not intended to render nondischargeable debts arising from simple breaches of contract."); *In re Peterson*, 332 B.R. 678, 682 (Bankr. D. Del. 2005) ("a knowing breach of contract will not ordinarily rise to the level of 'willful and malicious.'"); *In re Krautheimer*, 210 B.R. 37, 53 (Bankr. S.D.N.Y. 1997) ("of course, breach of contract is not a basis for non-dischargeability in section 523(a)(6) actions"). When a party intentionally breaches a contract, that party necessarily knows with substantial certainty that its breach will cause injury to the non-breaching party. To avoid rendering all breach of contract claims nondischargeable, the creditor must establish that the breach was malicious. *In re Coley*, 433 B.R. 476

14

(Bankr. E.D. Pa. 2010) (explaining that in the context of nondischargeability proceedings involving claims arising from a breach of contract, the inquiry turns on whether the breach was malicious). As evidence of malice, some courts have required a breach be accompanied by an intentional tort such as conversion. *See, e.g., In re Coley*, 433 B.R. 476, 499 (Bankr. E.D. Pa. 2010); *Aldus Green Co. v. Mitchell (In re Mitchell)*, 227 B.R. 45, 52 (Bankr. S.D.N.Y. 1998) (§523(a)(6) does not encompass a breach of contract claim unless the same act constitutes an intentional tort such as conversion). However, in what appears to be the present trend, courts now require a showing that the debtor knew with substantial certainty that its conduct would produce injury and was done without just cause or excuse. *Conte v. Gautum (In re Conte)*, 33 F.3d 303 (3d Cir. 1994) (recognizing that "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury"); *LL Lifestyle, Inc. v. Vidal (In re Vidal)*, Adv. No. 10-335, 2012 WL 3907847, *28 (Bankr. E.D. Pa. Sep. 6, 2012) ("the act resulting in the injury must be wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will") (quotations omitted); *In re Crawford*, 476 B.R. 890, 898 (Bankr. W.D. Pa. 2012) ("The action of a debtor can rise to the level of malicious if the injury was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will.") (quotations omitted); *In re Coley*, 433 B.R. 476, 498 (Bankr. E.D. Pa. 2010) (the Plaintiff must demonstrate that conduct was "wrongful and without just cause or excuse, *even in the absence of personal hatred, spite or ill-will*.") [emphasis in original].

In *Conte*, the Third Circuit stated that conduct is willful and malicious "if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result." *In re Conte*, 33 F.3d 303, 305 (3d Cir. 1995). Significantly, *Conte* did not address the nondischargeability of a breach of contract claim and courts applying the *Conte* substantial-certainty standard have recognized that it is inapplicable in the breach-of-contract context. As observed by Judge Frank,

> if applied woodenly, the *Conte* formulation of the §523(a)(6) standard can be overbroad. For example, a debt arising from a deliberate decision (perhaps out of economic necessity) to breach a commercial contract, arguably falls within the *Conte* test because it arises from intentional and wrongful conduct that has an objective likelihood of producing injury to the other party to the contract. Yet, §523(a)(6) is not intended to

>render nondischargeable debts arising from simple breaches of contract. *A limiting principle is sorely needed.*

*In re Jacobs*, 381 B.R. 128, 138 (Bankr. E.D. Pa. 2008) (emphasis added).

The limiting principle is incorporated by the malice prong. To be malicious, the conduct must have been undertaken *without just cause or excuse*. *In re Jacobs*, 381 B.R. 128, 139 (Bankr. E.D. Pa. 2008). In other words, even though an actor may know that her breach will harm the counter party to the contract, malice may not be inferred from the breaching party's conduct if her breach was intended to maximize her personal financial interests. *See, e.g., In re Brown*, 442 B.R. 585, 620 (Bankr. E.D. Mich. 2011) ("actions that are calculated to benefit a debtor, with any harm to a plaintiff being a result of the debtor's reckless disregard for the plaintiff's economic interests, are not malicious for purposes of §523(a)(6)"); *In re Harland*, 235 B.R. 769, 779 (Bankr. E.D. Pa. 1999) (holding that debtor's conduct was intended to maximize his personal financial interests and therefore not sufficient to exempt claim pursuant to §523(a)(6)).

An examination of *Jacobs* illustrates the requirement that to state a §523(a)(6) claim for an injury resulting from a breach of contract a party must allege facts that negate the inference that the breach was motivated by some reason other than a debtor's personal financial interests. In *Jacobs*, Judge Frank addressed whether a debtor was estopped from challenging the nondischargeability of a claim arising from a state court judgment. The creditor had been a fellow shareholder and manager of a corporation with the debtor. After the relationship between the parties soured, the debtor engineered the ouster of the creditor. The state court found that by doing so the debtor had violated the fiduciary obligations owed by a majority shareholder to minority shareholders in closely held corporations. In the nondischargeability proceeding, the creditor argued that issue preclusion was sufficient to render its claim nondischargeable pursuant to both §§523(a)(4) and (6). Despite the state court's finding that the debtor had the creditor's claim arose from a breach of the debtor's fiduciary obligation, Judge Frank did not address the §523(a)(4) claim. Rather, he limited his analysis to §523(a)(6).

Judge Frank had no difficulty finding that the record in the state court proceedings established that the Debtor had acted willfully. As for the issue of maliciousness, Judge Frank relied on the state court's finding that the Debtor's conduct was intended as retaliation for the creditor's interference in other business of the Debtor. Based upon the debtor's retaliatory motive, Judge Frank found that the state court's findings were sufficient to establish that the debtor was not motivated by a desire to maximize his personal financial interests and therefore had acted maliciously. *In re Jacobs*, 381 B.R. 128, 147 (Bankr. E.D. Pa. 2008).

According to this reasoning, the Movant is required to provide evidence that established that the Debtor's conduct was motivated by some purpose other than the maximization of the Debtor's financial interests. The Movant must prove that the Debtor acted with a substantial certainty that his conduct would harm the Movant. The Movant must also present evidence that establishes that the Debtor's intent was focused upon harming the Movant and not focused on maximizing his personal financial interests. *See, e.g., In re Brown*, 442 B.R. 585, 620 (Bankr. E.D. Mich. 2011) ("actions that are calculated to benefit a debtor, with any harm to a plaintiff being a result of the debtor's reckless disregard for the plaintiff's economic interests, are not malicious for purposes of §523(a)(6)"); *In re Harland*, 235 B.R. 769, 779 (Bankr. E.D. Pa. 1999). The Movant has failed to present any evidence from which this Court could determine that the Debtor was not motivated by his personal financial interest. If this Court were to adopt the Movant's argument, any intentional breach of contract would be rendered nondischargeable, a result surely not in keeping with purposes of the Code. *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991) (explaining that exemptions from discharge are to be construed narrowly); *Ins. Co. of N. Am v. Cohn (In re Cohn)*, 54 F.3d 1108, 1114 (3d Cir. 1995) (same). By omitting any reference to the just cause or excuse portion of the malice inquiry, this Court finds that the Movant has not met its initial burden and is not entitled to summary judgment on its §523(a)(6) claim for relief.

## IV. CONCLUSION

As stated above, this Court finds that the Movant is not entitled to summary judgment declaring its claim exempt from discharge. With regard to its §523(a)(2)(A) claim, this Court finds that the Movant

has not identified evidence sufficient to establish that its reliance on the misrepresentations contained in the Partnership Agreement and subsequent contribution notices was justifiable. This Court also finds that the Movant is not entitled to have its claim exempted to discharge pursuant to §523(a)(6) because the Movant has not identified sufficient evidence that the Debtor acted without just cause or excuse. For these reasons, the Motion is denied.

      An Order consistent with this Memorandum will be entered.

Dated: July 3, 2013

                                                  MAGDELINE D. COLEMAN
                                                  UNITED STATES BANKRUPTCY JUDGE